Our first case of the morning is 415-0475. In the interest of K.C. for the appellant, Mr. Martinkus, for the appellee, Ms. Brooks, you may proceed. Ms. Brooks, counsel. If Ken Connolly is an unfit parent, how does he address, fix, or correct any of the things that gave rise to the adjudication of neglect? I think that's the first question you have to ask. If you remember, and I realize that you've already ruled with respect to the respondent mother's case, the same panel not too long ago, so I know you're familiar with the facts. The state brought a petition on two counts. Count one addressed the issue of the mother of this child having not corrected conditions resulting in a prior adjudication of a parental unfitness. The second count was directed as an environment injurious to this child's welfare when she resided with Tanisha Jones and or my client. The state dismissed count two at the adjudicatory hearing. The only findings giving rise to this unfitness is based upon Tanisha Jones' failure to correct conditions in a prior case. So what does my client do? What possible things can he do to correct those conditions? This court's addressed this issue already. I mean, this isn't something that has not been addressed by this court before. In the interest of CM, this court said specifically parental deficiencies collateral to the conditions that were the basis of the child's removal, even if serious enough to prevent the return of the child, are outside the scope of this inquiry and are therefore not relevant. And that's exactly what you have here. The trial court looked not at conditions relevant to Tanisha Jones being found unfit in a prior hearing, but looked at my client's arrest history, his criminal history. That was the basis. Just keep in mind this was a case where this child was born and immediately taken. There's been no conduct in which my client has done anything here whatsoever to give an indication. Counsel, is your argument that this court should not apply the best interest standard? Judge, yes, it's my position that the best interest standards can be applied, but only after the court makes the determination of unfitness. I just tried a case in Danville for a week that had that exact issue, and Supreme Court case after Supreme Court case stated clearly, you don't consider yourself, you don't consider the issue of best interest until and unless you determine unfitness. Otherwise, we have a situation where anybody can say, well, the best interest of this child is to be in a prominent family where this child can get horse riding lessons and can have paid college expenses. That's not the standard. The U.S. Supreme Court has talked about, and our court has talked about, the fundamental right of a parent to have a child. That's a fundamental right. So best interest alone doesn't matter. What are the options of the trial court at the dispositional phase? He could put this child in my client's care, finding that there was nothing at that point to give rise to any conclusion  He could have done what he did and placed the child in DCFS. I mean, there's probably some additional things he could have done, but those are the primary things. And what does the statute allow the trial court to consider at the dispositional phase? I mean, it's pretty broad, isn't it? It sounds like you're saying the court should just turn a blind eye to this additional information regarding your client and only look at the basis for the adjudication. Well, I think that if you look at the actual statute, and keep in mind, too, that for purposes of this determination of unfitness, there's no definition. I make reference to the Adoption Act as an analogy as to what the court could consider. But when you really look, then, at the statute, the statute talks about if the court determines and puts in writing the factual basis supporting the determination of whether the parents, god or legal custodian of the mind or judge awarded to the court are unfit or unable, for some reason other than financial circumstances alone, to care for, protect, train or discipline the minor or willing to do so. So if you look at what does unfit mean in that context, it has to be unfit to discharge the care, protection of the child. And my question was, what is the trial court allowed to consider in determining that? It's very broad. I think the court should consider the evidence presented at the dispositional hearing. And in this instance, unlike many cases I've been involved in, Carla Wages, she was the caseworker from Luton Services, she testifies at length, this is the only evidence. There's no evidence presented by the state. I asked Ms. Wages, and by that do you mean that there's been nothing that my client has done which would in any way give rise to some conclusion that he can't take care of this child? Am I correct with that? That is correct. And when you've observed my client with respect to visitation and so forth, can you describe to the court what you've observed? Mr. Connolly is very nurturing and affectionate during the visits. He and the baby do appear to be bonded. He is aware of when she needs to be cared for and changed. If she's hungry, he does recognize what her needs are at the time of the visit. Has he been consistent with his visitation in cooperation with Luton Social Services and DCFS? Yes, he has. Has he displayed good parenting skills when you've observed him during these visitation periods? Yes, he has. Is he able and willing to care for this child? At this point, he is. Would you also agree that he's completely cooperative with respect to anything that you've asked him to do and from your view of the record, anything that DCFS has asked him to do? Yes, he has. So what evidence is there before this court to find he couldn't care for the child? If we're looking at the definition of unfitness in the context of the statute, it can only be referencing the ability to care. If you permit a trial court to consider collateral views of bias or past status, this is the case where my client's status comes into play. The court says, you know what, I'm going to find that you're unfit because you have a criminal history and you've been arrested a lot. We're actually getting to the point where the trial court, in its order, specifically finds that the basis for his not getting this child is because he has a criminal background. Now, didn't your client testify at the dispositional hearing? He did. And he was impeached regarding his record as far as the last time he had been arrested? I don't know if he was impeached so much as there was some clarification. I mean, this is all in the record. This was nothing he was trying to hide. We never hid anything. I mean, the record was before the court. Of course, the judicial noticed these files. There was nothing there to hide. But the fact is he doesn't come close to the standards set forth in the Adoption Act for depravity. He doesn't come close to that. And I recognize that that's not necessarily the standard to be used for unfitness at this hearing. But it can't be in a vacuum. Counsel, this is what I'm getting at. I'm not so sure you're understanding where I'm coming from. At the dispositional phase, do you agree that it was appropriate for the court to consider your client's prior criminal history, the fact that he had been arrested for domestic battery shortly after getting out of prison for a domestic violence incident, those types of things? Do you agree that it's appropriate for the court to consider that? Not based upon this court's decision, no, I don't agree with that. I mean, how do you then distinguish what Justice Duggan said in his opinion? That collateral events, those events that might be individually and of themselves sufficient not to give a child back are irrelevant. I mean, then there's no meaning to that. But you read that sentence and you said, even if grave enough to prevent return of the child. So it appears that there's some consideration that there may be situations where the child is not returned. I think in this case there's no facts to support it. I mean, what facts are there? We have a situation where Carla Wade just comes in and testifies. My client, you know, he gets to see this child, this newborn child, four hours out of every 168 hours. While we're in court and doing all these things, you know, he doesn't get to see this child. So we're worried about what effect does this child have, but what effect does it have not seeing its father? I mean, those are issues that concern me. But I mean, otherwise, what are we doing here? Because now the state can say, hey, why would I ever be brought to the rigors of a trial in an adjudicatory phase where evidentiary rules apply? I can simply have one finding that a mother previously didn't correct conditions, and then I can introduce all that other evidence at the disposition hearing. It wasn't that the state couldn't do that. It could have done it had it done it properly. Had it, in fact, believed that my client's past criminal conduct was truly an issue that should be a basis to not let him have this child, go forward on count two. We're there to present evidence on count two. We have witnesses there. They dismiss count two. And then at the dispositional hearing, now all of a sudden my client's past criminal background is the basis to do it. Okay, I found the spot I'm talking about. 705 ILCS 405-2-27-1, in parentheses, states that all evidence helpful in determining these questions, including oral and written reports, may be admitted and may be relied upon to the extent of its probative value, even though not competent for the purposes of the adjudicatory hearing. I agree, Judge. But I mean, here's the context. Let's assume for the moment that the state has gone forward on count two. And the judge found as one of the basis for the adjudication of neglect, because of my client's background and so forth, that yes, that when this child potentially is with him, there could be neglect. There could be an environment in which jurist is welfare. Then I think, yeah, any report could come in and so forth. But how can you permit them to put all that evidence in when there's no basis for this at all based upon the adjudication? That's my point. It doesn't have to be a causal relationship between what was adjudicated, the basis for it, and those facts giving rise to why you find someone unfit. Well, can you cite any statutory language that would require that? Well, I've cited the case in this court, NRA-CM. I mean, that case, it's in my brief, and that case couldn't be clearer. It says if it's collateral to the conditions that were the basis of the adjudication, they can't be considered. I mean, I don't know what more I can... Was that a termination case? That was a termination case. Which is different than what we're dealing with. Well, it's different. But there's still a finding about fairness. I mean, it's still the same finding. But it's a totally different finding. It's a totally different finding in that... It has far different meaning. Yes, it has far greater consequences. But if we apply it and say, well, then it shouldn't apply in this instance, so does that mean that a court can basically bring in any evidence whatsoever? The other thing I want to make certain of you realize is that it's not only that case, but NRA-LM. That was a case in which the state asked the court to find unfitness based upon the fact that the defendant father in that case was a sex offender. And the court said, no, we're not going to do that. In that instance, the sex offender had offended a child outside the relationship of his family. And the court in that case said status alone is not sufficient. Because what do we have here now? How does my guy correct his status? Carla Wages comes in and says he's a great father, done everything proper. How do I go back and say, you've got to change what happened to you 10 years ago. How does he do that? Could he start by completing domestic violence counseling and not reoffending, not being arrested for domestic violence? Well, I mean, sure, he can do that. But he can't change the fact that in the past he's had some of these events. See, I'm not so sure it was based on just that he had it in the past. It seemed like they were concerned that it had not been remedied. He had not addressed, effectively addressed, the issues with respect to these allegations that he took a knife to a woman, and that he beat a woman, and things of that nature. He went in prison, took anger management courses. He took the family advocacy course through Lutheran Services. Those all presented to the court. But then he was arrested after his release from prison for domestic violence. And so there was still ongoing concern. But again, if we're basing things on arrests, I don't know how that really fits here. I mean, people get arrested. In my business, people get arrested all the time. I was guilty of what they did. Are we to assume because he got arrested, therefore he shouldn't have his child? That's my concern. Is it going to be based on an arrest? Well, it's not just an arrest. It's an arrest for the very same crime, which has to do with how he interacts with females and how he interacts with other people in his family or social circle. Let's suppose that the basis for the adjudication is the same. And during the dispositional phase, you find out that he was convicted of a child murder in Arizona 10 years earlier, and that was unknown. Can the court take that into account? Yeah, if you're talking about a situation where the court initially found my clients. All right, let's say it's at the adjudicatory phase, and he doesn't have anything to present, and he didn't step in and intervene and properly parent the child when the child's mother was in conflict with him or whatever, nor did he take into account her intellectual limitations in providing care for this child, doing the normal parenting things. That's the adjudication. That neither of them were tending to the care of this child, and at that point they were not doing that because they were engaged either in domestic violence or inadequate supervision because he's not there to take over when her intellectual limitations don't permit her to be a parent. Sure, Judge, I understand what you're saying, but those aren't the facts here. Here we have his mother, who comes as a nurse, who testifies at the hearing that she's got a house, she's capable, she's a system. My client has a nine-year-old daughter that he sees regularly. Those aren't the facts, and those aren't the facts that are presented at the dispositional hearing. They just weren't. I mean, Carla Wages, who testified at Lane. If this were all submitted at a petition to terminate parental rights, what do you think the result would be? What was presented here, what you just said? Well, I don't know how you'd... You wouldn't. You wouldn't, would you? You wouldn't probably... There wouldn't be a termination of parental rights. So what does this adjudication mean? It means you have to address certain things, and while you've indicated some things have been addressed, if the single black mark, the single darkest black mark in your history is this horrible description of that aggravated domestic battery, wouldn't you think that your client would eagerly seek domestic violence counseling upon any notice that this child was going to be considered to be returned to him or considered to be not returned to him, and yet that is the single thing that he has absolutely not done? Well, yeah, unfortunately, you're not aware of what's happened subsequently. Right. And, you know, he's done all that and it hasn't mattered at all. I don't know whether it's mattered or not. I know, Your Honor, that's why I hesitate to even mention it to you. But, yeah, it certainly sounds logical from what you're saying, but the pragmatic application in Champaign County is that that's not what happens. And, you know, no matter what you do here, I'll probably be back again at some point in this case because I don't see my client being in a position to ever being able to successfully change his steps. He's gone through DCFS, you know, has already given him his mental health evaluations, no problems. All right, then, I will ask you a question, and this would be your opinion rather than something outside the realm. That's right, Judge. Are you suggesting hypothetically that social services had been provided to him, that he's done certain things, that he's gotten a clean bill of health from lots of folks who have looked at him and examined him, and for reasons, perhaps policy reasons, that exist in that particular county, he's a loser? Yes, unequivocally. And I suspect I'll be back here again someday because that's exactly what I'm saying. And it's in that context that I think it makes it so much more difficult when I look at this case and the state comes in and alleges anything. Counsel, I find it a little bit remarkable that you're saying you'll be back here if your client completes the service plans that he's given and maintains the status of not committing any offenses, not being arrested and the like, but you think you'll be back here anyway? Yeah, I do, and I can only represent to you that I've been through one status here already in where DCFS has given the plan, he's done everything possible, and the trial court said to DCFS, well, that's just not enough. It must be that the counselor who gave him the clean bill of health didn't have enough facts, and you need to go back and change the status of the plan. So we've gone through every group, and he's got a clean bill of health, just like you say, and it doesn't make any difference. That's the only reason I suggest I'll be back, too, because at some point I probably will appeal the next hearing when he doesn't get his kid back. I realize these are tough cases. I don't know why I take them, frankly. I age every time I take one of these. But they're emotional, and I earnestly have concerns that my client and this child are both being cheated here. I really do believe that. I mean, here you've got a kid who's not going to really see her father four hours out of 168 hours. That's part of the problem. If you have a situation where someone is seeing this child for 30 hours out of 168 or a day or something, maybe then, okay, I understand that. I understand the court's concern. We need to get these services and all these things done. But this is a drastic situation in Champaign County and elsewhere, too, where the parent becomes – and then what happens is, well, then the parent hasn't bonded enough, and then the foster parents have bonded. I've been through these. Now, all of a sudden, this child's been in the foster care of these people. The child's been so remarkably well. My client says, what happened? What did I do wrong? My client had a miserable past, no question about it. He did some terrible things. The question is, can he ever get past it? And I understand where you're coming from. I truly do. And upon my representation to you, that's the frustration. I would have dismissed this appeal had we been able to get some resolution by now. But when a child court says, you're not likely to get this child in the near future, this isn't going to happen. When those are the comments that I get, after a clean bill of health, after, once again, everybody coming into court and saying, this guy's done everything he can possibly do, that's the troubling aspect. Thank you, Kevin. We'll hear from you on rebuttal. Thank you. Good morning, Your Honors. I'm Allison Paige Brooks, appearing on behalf of the people. This was a case that was briefed by Luke McNeil. May it please the Court, Counsel. First of all, this Court needs to keep in mind its role in the case, which is to review this particular judgment in light of the record and implying the standard review, which is very deferential, which is against the manifest weight of the evidence. Whether the respondent father was found, properly found to be dispositionally unfit under the Juvenile Court Act by preponderance of evidence. And the State's position is that the child court did rule correctly in making that determination because there was evidence in the record that did support that determination. Even though there was conflicting evidence favoring the respondent parent, that went the other way, even if this case is closed, because of the standard review, the appealing party loses. The respondent father emphasizes that the prosecutions presented no evidence, but there was the dispositional report, which is what the, when the prosecutors was asked, well the Court mentioned we're at a dispositional hearing, there's been a written report prepared and asked the prosecutor, would you like to add? And the prosecutor says nothing in addition. So the prosecution presented no additional evidence, but that doesn't mean that there was no evidence. The evidence was in the form of the dispositional report. And respondent father also emphasizes the testimony of Carla Wages, who was the case worker who testified on behalf of the respondent father. However, it was that dispositional report of Carla Wages, in which on page 52 of the record in the common law says that Lutheran Social Services respectively recommends the following. Number one, DCFS maintain custody and guardianship of the minor. So essentially that is an implication that the case worker is recommending an unfitness finding because the DCFS wouldn't be maintaining custody and guardianship without the respondent parent and father being considered dispositionally unfit to exercise custody and guardianship. So for that reason, Carla Wages' opinion was actually in favor of the trial court's judgment, despite his willingness, for example, to participate in services, services which were at that point not actually provided in terms of the domestic violence counseling, which should be considered to be so key in terms of mitigating this risk of domestic violence that arises from the severity of the defendant's history, criminal history, a violent criminal history, in terms of the original offense that was very severe in terms of cutting a woman's hands, legs, and shoulders and back with a knife. That's a very dangerous weapon. Sentenced to 10 years in prison. And now that he does get some anger management counseling in prison, and within a few months of getting out, in October 2012, then is now arrested again for a domestic battery, grabbing a woman by the neck and strangling her, according to this report, the dispositional report, strangling her and grabbing her by the shoulder, throwing her into the tile floor and causing injury above the eye. And there is an active order of protection. So even though it was mere arrest and that case was not prosecuted to a trial or conviction, this is evidence that's in the record, that it can be considered by judges relevant and without some sort of authority by the respondent parent to show that that consideration was improper, then that is evidence in support of the judgment. And the respondent does cite NRACM, which is a termination case dealing with a particular definition of parental unfitness for purposes of termination of parental rights. Under the Adoption Act, Section 1, capital D, M, subsection little i. And that deals with correcting conditions. So when the statutory language says that it refers to correcting conditions that resulted in the removal of the child, in this court, CM held that the unfitness had to relate to those conditions. So it's just simply an application of statutory language in a different context, which does not apply to dispositional unfitness here. And in LM, the other case cited by the respondent was an adjudication dealing with the issue of injurious environment. Well, this is not an appeal concerning the adjudication of neglect. This is an appeal of the dispositional order and the finding of parental unfitness. So that case also is an absent. And with respect to the prosecutor's alleged tactic here of adjudicating him only on account one, which related to the respondent mother, and dismissing the account two, which pertained to the domestic violence issue, there's no authority that's cited by the respondent father to show that somehow parental unfitness has to be limited only to the matters referenced in account upon which the minor was adjudicated and neglected. Because the remedial purposes of the Juvenile Court Act should be broad enough to provide protection for minors, such as this one, from the risks of domestic violence, even if that was not one of the issues upon which the minor was adjudicated to be neglected, should be available for consideration by the court. And so, let's see, the last point is that the respondent father says that he can't, oh no, I'm sorry, he also says there's been nothing that he's done since the birth of this child. There's no authority that limits his unfitness only to matters of abuse of the child. If the domestic violence here involved adults, it was still occurring in the household, or would be potentially occurring within a household and affect the minor in that way. So the other thing is, I guess, the respondent father says that he'll be back in a public court because he assumes or is referring to what matters that are occurring ongoing. But he's not filed a motion to supplement record with additional proceedings that happened after this, even if those were in fact relevant to this court's decision, which the state does not believe it would be. So this court should not consider matters that are not in the record and have not been supplemented to the record. And this court should not attempt to use this ruling in this case in order to do anything with respect to other cases that may be ongoing in Champaign County, for example, or with respect to this case, or what may or may not happen in the future of this particular case. I think we understand. Right. And to await a further appeal in order to make that a determination in this particular case. So for those reasons... Well, are you saying in counsel that the respondent completes his services without any glitches, but in the process of doing so, the minor becomes bonded to the foster parent? The trial court, looking at permanency and the bonding that has occurred, decides it's in the best interest to terminate. You representing this court, the state, won't be back here defending that, if that were the case? Well, you can't terminate based on bonding. I mean, you've got a two-step process, correct? Correct, Your Honor. And it does require the respondent parent to be proved by clear and convincing evidence to be unfit within the Adoption Act definition. If that were the case, and he's trying to say on this record he shouldn't be considered depraved, which is only one of the small subsections, but even assuming if he does everything he needs to do, for example, and would not be considered unfit then under subsection M, which deals with reasonable progress in correcting conditions. So if he does everything that he's supposed to do, the state's not going to file termination? I'm not going to bind the state to that because there's other subsections, for example, or there may be another way for the state to prove by clear and convincing evidence that he should be found unfit under the Adoption Act for a different reason, for example. Well, that seems like counsel's right then. So if he does everything he's supposed to do, it doesn't make any difference? Not necessarily, Your Honor. It's just that he might make some progress during a certain time period and then have another new incident of domestic violence, and then that sets back his progress. Then he didn't complete the service plan without glitches, which was the preface of my question. Oh, to complete service plan without glitches? Yes. And then his argument would be that he should be entitled to custody at that point if he's done everything that he's been asked to do and that the only thing that's being held against him is his prior history, which was either arrest in 2012 or conviction in 2006 or 2007. Do you know if he meets the definition of depraved at this point under the statute? I don't know enough about his entire criminal history to know whether that would apply or not. So I do not know whether he would be considered unfit under the Adoption Act. Even if he does everything he needs to do, for example, to avoid a finding of a lack of reasonable progress, for example, towards reunification. But essentially this Court just simply has to review whether he is unfit dispositionally and whether the judge's ruling that he was, and especially in light of Caseworker Carla Wage's recommendation that DCFS should maintain custody and guardianship, whether that ruling was against the manifest way of the evidence. The State's position is it is not against the manifest way of the evidence, and therefore the State requests the Court to affirm the judgment. Thank you for your time, and I'll entertain any other questions. We have none. Thank you. Justice White, to answer your question, I don't believe he can't fit the definition of depravity because there's been no conviction in the last five years. Okay. Second, with respect to the facts here, there was never any facts that he ever had harmed a child, ever. And I think that's important because I quoted earlier in Ray L. M., the cases that are cited within that case shed light on that issue. In our in Ray L. M. case, the Court states, quote, We note in reaching this conclusion that courts in other jurisdictions have found that a father's sex offender status, without more, cannot form the sole basis for restricting the father's parental rights. A father who committed heinous sex crimes against a non-related 14-year-old girl  So, again, I think there is a distinction here, factually, as to what was before the Court. And I appreciate your consideration. It's always a difficult case without his appearance. Thank you, Counsel. We'll take the matter under advice. We'll leave the readiness of the next case.